UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NAVIGATOR BUSINESS SERVICES LLC,

          Plaintiff,

    v.

AIGUANG CHEN and JIN WU YU,

          Defendants.

**MEMORANDUM & ORDER**
20-CV-06159 (HG) (MMH)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff has filed a motion for summary judgment seeking to collect a loan of $2.5 million in principal, plus accrued interest, which Defendants guaranteed. ECF No. 43. Defendants have moved to dismiss Plaintiff's claims, pursuant to Rule 12(b)(1), arguing that Plaintiff has failed to plead or to prove its state(s) of citizenship and, therefore, failed to invoke the Court's diversity jurisdiction. ECF No. 44. Alternatively, Defendants have moved to dismiss this case or to transfer it to the U.S. District Court for the District of New Jersey because the parties entered into security agreements at the same time as their guaranty agreements that had New Jersey forum selection clauses. *Id.* For the reasons set forth below, the Court denies Defendants' motion to dismiss for lack of subject matter jurisdiction and denies Defendants' request to dismiss or transfer the case based on the forum selection clauses. The Court grants Plaintiff's motion for summary judgment to the extent it seeks to enforce Defendants' payment obligations but denies Plaintiff's request for attorneys' fees and costs and for specific performance to enforce the financial disclosure obligations in the parties' guaranty agreements.

# FACTUAL BACKGROUND[1]

Plaintiff and non-party SH 168, LLC entered into a Commercial Loan Agreement (the "Loan Agreement") in August 2019, pursuant to which SH 168 borrowed $2.5 million from Plaintiff.  ECF No. 48-9 ¶ 6.  At the same time, SH 168 signed a promissory note (the "Note") requiring SH 168 to pay Plaintiff the $2.5 million principal on the Note's maturity date of February 12, 2020, along with an annual interest rate of 13.5%.  *Id.* ¶ 9.  SH 168 was required by the Note to make monthly interest payments of $28,125 commencing on September 12, 2019, and ending with a final payment of interest and principal in the amount of $2,528,125 on February 12, 2020.  *Id.* ¶ 10.

Pursuant to the terms of the Loan Agreement, SH 168's failure to make payment in full when due would be an event of default.  ECF No. 48-9 ¶ 8.  In the event of a default, the Note provided that the post-default interest rate would increase to an annual rate of 25% or the maximum amount permitted by law.  *Id.* ¶ 10.  Defendants are members of SH 168, and at the same time SH 168 signed the Loan Agreement and the Note, each Defendant signed an agreement entitled "Guaranty," through which each Defendant guaranteed SH 168's payment obligations under the Loan Agreement.  *Id.* ¶¶ 6, 11.

Each Guaranty that Defendants signed contains a choice-of-law clause stating that it is governed by New Jersey law, but neither Guaranty contains a forum selection clause.  ECF No. 43-5 § 14; ECF No. 43-6 § 14.  Each Guaranty also contains an integration clause saying that it "is the complete and final expression of the agreement" between Plaintiff and each Defendant.

---

[1]     Unless a fact in this section is expressly described as Plaintiff's contention, these facts are based on the facts that Defendants have not disputed in their response to Plaintiff's Local Rule 56.1 statement (ECF No. 48-9), the contracts between the parties that Defendants have not disputed that they entered into, and exhibits supplied by Defendants in opposition to Plaintiff's summary judgment motion (ECF Nos. 48-1 to 48-8).

ECF No. 43-5 § 15; ECF No. 43-6 § 15.  The Loan Agreement and the Note similarly contain

New Jersey choice of law clauses and no forum selection clauses.  ECF No. 43-3 § 11; ECF No.

43-4 § 14.  At the same time the parties executed the Guaranties, however, Plaintiff and

Defendants entered into separate agreements, each entitled "Security Agreement," that gave

Plaintiff a security interest in various forms of property that Defendants owned.  ECF No. 1-7 §§

2–3.  Each Security Agreement not only contains a New Jersey choice of law clause, but also a

forum selection clause providing that, "[i]n the event of a dispute, the exclusive forum, venue

and place of jurisdiction will be in New Jersey, unless otherwise required by law."  ECF No. 1-7

§ 14.  Plaintiff has amended its complaint, however, to withdraw all claims that Plaintiff

previously asserted based on the parties' Security Agreements, and Plaintiff is not seeking

summary judgment on any claim arising under the Security Agreements.  *See* ECF No. 37;

Minute Entry dated June 7, 2022.

Defendants do not dispute that SH 168 did not make the principal or interest payment due

on the Note's originally-scheduled maturity date of February 12, 2020, or that Defendants failed

to make that payment pursuant to the Guaranty.  ECF No. 48-9 ¶¶ 15, 17.  However, the Note

permitted SH 168 to extend the maturity date by six months by paying an extension fee of

$25,000 on January 12, 2020, "together with one lump sum prepayment of 6 (six) months

interest in the amount of $168,750.00."  *Id.* ¶ 19; ECF No. 43-4 § 9.  After the deadline to extend

the maturity date had passed, on a date not specified by the parties, SH 168 paid Plaintiff

$50,000—*i.e.*, more than the amount of the modification fee required by the Note but less than

the combined amount of the modification fee and the prepayment of six months of interest.  ECF

No. 48-9 ¶ 20.  However, Defendants do not contend that they or SH 168 made a full payment of

$193,750, as required by the terms of the Note to obtain an extension, on or before January 12, 2020. *Id.* ¶¶ 20–22.

Instead, Defendants contend that they complied with their obligations under the Guaranties because SH 168 entered into a new agreement with Plaintiff entitled Modification and Extension of Mortgage and Note (the "Modification Agreement"). If the Modification Agreement were an enforceable contract, it would have provided for a new maturity date of November 12, 2020, in exchange for a series of four payments totaling $272,208.22, starting with an initial payment of $75,000 on July 10, 2020. ECF No. 48-3 at 10.

On July 10, 2020, SH 168 sent Plaintiff a version of the Modification Agreement, signed by Defendant Chen on the company's behalf, and wired Plaintiff the initial payment of $75,000. ECF No. 48-3. Defendants' counsel followed up with Plaintiff's representatives several times, asking for a counter-signed version of the Modification Agreement signed on behalf of Plaintiff. ECF No. 48-7. Although one of Plaintiff's employees told Defendants' counsel in an email on July 23, 2020, that she "w[ould] try to email [him] a copy tomorrow," *see* ECF No. 48-4 at 2, and Plaintiff's attorney told Defendants' counsel in an email on August 12, 2020, that "[t]he documents have been executed," *see* ECF No. 48-7 at 3, Defendants concede that "Plaintiff never provided a fully signed [Modification] Agreement to the Borrower," *see* ECF No. 48-1 ¶ 26.

Plaintiff contends that it never signed the Modification Agreement because, among other reasons, Plaintiff learned from a title report that SH 168 had failed to pay real estate taxes on real property that was secured by a separate mortgage agreement between the parties and had failed to provide proof that it had maintained insurance for the property, as required by the Loan Agreement. ECF No. 48-9 ¶ 25. The version of the Modification Agreement that SH 168 signed

4

incorporated the representations and warranties from the Note and Loan Agreement, and required those representations and warranties to be true as of the date of the Modification Agreement.  ECF No. 48-3 at 10.  Plaintiff contends that these alleged failures by SH 168 were breaches of those representations.  ECF No. 48-9 ¶ 25.

## LEGAL STANDARD

With respect to Defendants' motion to dismiss for lack of subject matter jurisdiction, Plaintiff, as the party invoking the Court's jurisdiction, has the burden of "prov[ing] jurisdiction by a preponderance of evidence." *Platinum-Montaur Life Scis., LLC v. Navidea Biopharms., Inc.*, 943 F.3d 613, 617 (2d Cir. 2019).[2]  "[A] Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial, *i.e.*, based solely on the allegations of the complaint and exhibits attached to it, or fact-based, *i.e.*, based on evidence beyond the pleadings." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022).  If "jurisdictional facts are placed in dispute," then the Court "has the obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Id.*

Although the Court may decide to hold a hearing to resolve jurisdictional facts, the Court is required to "leave the jurisdictional issue for the trial" only if "the overlap in the evidence is such that fact-finding on the jurisdictional issue will adjudicate factual issues required by the Seventh Amendment to be resolved by a jury." *Alliance for Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 (2d Cir. 2006).  The Second Circuit has emphasized that the existence of such an overlap requiring the "deferral of a jurisdictional issue until trial is an extremely unusual situation." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 444 n.7 (2d

---

[2]    Unless noted, case law quotations in this order accept all alterations and omit internal quotation marks, citations, and footnotes.

Cir. 2019).  Instead, "the Seventh Amendment's guarantee of the right to the ultimate determination of issues of fact by the jury, does not extend to the threshold issues that *courts* must address to determine whether litigation is being conducted in the right forum at the right time," such as issues of subject matter jurisdiction.  *Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011) (emphasis in original).

With respect to Plaintiff's motion, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In other words, a court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The moving party has the burden of demonstrating that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

When deciding a summary judgment motion, any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party.  *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995).  Although "courts must refrain from assessing competing evidence in the summary judgment record and avoid making credibility judgments," a party must defeat summary judgment by putting forth "evidence on which the jury could *reasonably* find for the non-moving party."  *Saeli v. Chautauqua Cty.*, 36 F.4th 445, 456 (2d Cir. 2022) (emphasis in original) (affirming summary judgment dismissing claims).

When a plaintiff moves for summary judgment on its claims and asks the court to strike the defendant's affirmative defenses in doing so, "whatever evidence *there is* to support an essential element of an affirmative defense will be construed in a light most favorable to the non-moving defendant," but "there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Avail 1 LLC v. Varlas*, No. 19-cv-1922, 2023 WL 4373540, at *4 (E.D.N.Y. July 6, 2023) (quoting *Fed. Deposit Ins. Corp. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994)) (granting summary judgment striking affirmative defenses). Instead, "where a plaintiff's motion for summary judgment would be meritorious absent the assertion of an affirmative defense, in order to avoid summary judgment, the defendant must adduce evidence which, viewed in the light most favorable to and drawing all reasonable inferences in favor of it, would permit judgment for it on the basis of that defense." *Townsquare Media, Inc. v. Regency Furniture, Inc.*, No. 21-cv-4695, 2022 WL 4538954, at *20 (S.D.N.Y. Sept. 28, 2022) (finding that defendants had "abandoned" their affirmative defenses by not presenting arguments in favor of their validity in opposition to plaintiff's motion for summary judgment); *see also In re 650 Fifth Ave. & Related Props.*, 830 F.3d 66, 97 n.29 (2d Cir. 2016) (explaining that "controlling Supreme Court and Second Circuit case law sets forth the principle that a non-moving party must have some evidence permitting a reasonable juror to find in its favor with respect to an affirmative defense").

## **DISCUSSION**

The Court denies Defendants' motion to dismiss the complaint for lack of subject matter jurisdiction and also denies Defendants' request to dismiss or transfer this case based on the forum selection clauses in the parties' Security Agreements. The Court grants Plaintiff's motion

for summary judgment as to Defendants' payment obligations under the Guaranties, strikes Defendants' affirmative defenses, and dismisses Defendants' counterclaim.  However, the Court denies, at this stage, Plaintiff's request for specific performance to enforce the financial disclosure obligations in Defendants' Guaranties and for attorneys' fees and costs.

I.      **Defendants' Motion to Dismiss or Transfer the Case Fails**

A.      *Plaintiff Has Proven Diversity of Citizenship and Subject Matter Jurisdiction*

Defendants have admitted in their answer that they are each citizens of New York.  ECF No. 41 ¶¶ 3–4.  However, they challenge the following allegation in Plaintiff's amended complaint as insufficient to identify Plaintiff's citizenship and, therefore, to demonstrate diversity of citizenship between the parties:

> At all times relevant herein, Plaintiff had one member, which is a limited partnership organized and existing under the laws of the State of Delaware and which maintains a principal place of business in the State of New Jersey.  The sole member of each partner of the limited partnership which is a limited liability company is an individual who was a citizen of the State of New Jersey at the time when this action was filed.  Each partner of the limited partnership which is not a limited liability company is comprised of one or more individuals who were citizens of the State of New Jersey at the time when this action was filed. Plaintiff is not a New York State regulated bank or servicer or a federally backed mortgagee.

ECF No. 37 ¶ 2.  As further explained in this section, this allegation is sufficient to demonstrate that Plaintiff is a citizen of New Jersey and that diversity jurisdiction exists.  The evidence submitted by the parties reinforces this conclusion, and the Court is entitled to weigh that evidence rather than present it to a jury for the reasons explained above.  *See Broidy Cap. Mgmt.*, 944 F.3d at 444 n.7 (explaining that "deferral of a jurisdictional issue until trial is an extremely unusual situation").

8

Since Plaintiff is a limited liability company, it "takes the citizenship of all of its members" for the purpose of determining diversity jurisdiction. *Platinum-Montaur*, 943 F.3d at 615.  Similarly, the limited partnership that is Plaintiff's sole member "takes the citizenship of all of its partners." *Id.*  Plaintiff has submitted a declaration, made under penalty of perjury, explaining in greater detail that the limited partnership that is Plaintiff's sole member has, in turn, five partners:  (i) non-party Richard Han; (ii) two limited liability companies, of which Mr. Han is the sole member; (iii) a fiduciary trust for which Mr. Han and his father are the sole trustees; and (iv) a fiduciary trust for which Mr. Han's wife and Mr. Han's mother are the sole trustees.  ECF No. 43-27 ¶ 1.  The identity of these partners is also corroborated by the limited partnership's tax return for the year 2020.  ECF No. 43-28.

The U.S. Supreme Court has not definitively decided how to determine the citizenship of a fiduciary trust for the purpose of determining diversity jurisdiction, but the Second Circuit has interpreted various Supreme Court decisions addressing the citizenship of trusts to mean that, for a fiduciary trust, "it is the trustees' citizenship that must determine diversity." *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 729–31 (2d Cir. 2017).  Although Defendants assert that "[t]he citizenship of trusts could be the citizenship of its trustee(s), its beneficial owner(s), or both," *see* ECF No. 44-5 at 7, they rely on an inapposite case that dealt with the citizenship of "an unincorporated statutory trust that services residential mortgage loans." *MSR Tr. v. Nationstar Mortg. LLC*, No. 21-cv-3089, 2022 WL 392405, at *1 (S.D.N.Y. Feb. 9, 2022).  The Second Circuit expressly held in *Loubier* that the criteria that determine the citizenship of such trusts "do[] not apply to a traditional trust that establishes only a fiduciary relationship." *Loubier*, 858 F.3d at 729.

Plaintiff's citizenship is, therefore, determined by the citizenship of Mr. Han, his wife, his

father, and his mother at the time Plaintiff filed this case. *See Van Buskirk v. United Grp. of*

*Cos.*, 935 F.3d 49, 53 (2d Cir. 2019) (explaining that "[f]or purposes of diversity jurisdiction, the

relevant domicile is the parties' domicile at the time the complaint was filed"). Mr. Han's

declaration explains that, at that time, each of these individuals was a citizen of New Jersey, had

resided in New Jersey "for many years" prior to this case, had submitted income tax returns to

New Jersey, was registered to vote in New Jersey, and had a New Jersey driver's license. ECF

No. 43-27 ¶¶ 1–2. This evidence is adequate to demonstrate that these individuals are citizens of

New Jersey and that Plaintiff is likewise a citizen of New Jersey and no other state. *See*

*Krechmer v. Tantaros*, 747 F. App'x 6, 10–11 (2d Cir. 2018) (holding that district court properly

relied on similar evidence about defendant's residence, voter registration, tax filings, and driver's

license to determine defendant's state of citizenship); *Maitland v. Fishbein*, 712 F. App'x 90, 92

(2d Cir. 2018) (relying on plaintiffs' driver's licenses to determine their state of citizenship).

Defendants have attacked Plaintiff's assertion of jurisdiction on two grounds, one of

which is based on the pleadings and the other of which is based on evidence. First, Defendants

argue that Plaintiff's allegation that diversity of citizenship exists is facially invalid because the

amended complaint does not identify each partner of the limited partnership that owns Plaintiff.

ECF No. 44-5 at 7. The amended complaint does, however, explain that each partner is either an

individual who is a citizen of New Jersey or an entity that draws its citizenship from individuals

who are citizens of New Jersey. ECF No. 37 ¶ 2. This level of detail is sufficient because a

limited liability company is not "require[d] . . . to specifically identify the names and locations of

each individual member of the LLC" in order to invoke diversity jurisdiction. *Jean-Louis v.*

*Carrington Mortg. Servs., LLC*, 849 F. App'x 296, 298 (2d Cir. 2021) (affirming refusal to

remand case to state court because defendant limited liability company had adequately, through

sworn affidavit, "traced [defendant's] ownership and identified the citizenship of its member

limited liability companies, limited partnerships (general and limited partners included), and

private individuals" without specifically identifying the members).  Defendants' facial attack on

Plaintiff's pleading of diversity jurisdiction therefore fails.

       Defendants' second attack on diversity jurisdiction is fact-based and derived from

supposed contradictions between Mr. Han's declaration and his deposition testimony.  The first

of these alleged contradictions is Mr. Han's testimony that he "believe[d]" Plaintiff's sole

member was a limited liability company, *see* ECF No. 44-4 at 11, rather than a limited

partnership, as stated in his declaration, *see* ECF No. 27 ¶ 1.  Mr. Han further testified that

Plaintiff's sole member was owned by "[m]yself, my wife, or entities that are affiliated with me,

or my wife," including the two trusts described in his declaration, but his declaration does not

identify his wife as a direct partner of the limited partnership.  ECF No. 44-4 at 11–12.  Since

Mr. Han expressly caveated that his testimony was based on his limited recollection and

accurately testified about the basic contours of Plaintiff's ownership, the Court deems this to be

an instance in which a deponent's subsequent declaration has "amplifie[d]" previously

"ambiguous" testimony, rather than contradicted that testimony, thereby making it appropriate

for the Court to consider Mr. Han's declaration.  *See Ridge v. Davis*, No. 18-cv-8958, 2022 WL

357020, at *6–7 (S.D.N.Y. Feb. 7, 2022) (permitting plaintiff to submit affidavit in opposition to

summary judgment motion, even though he had been deposed).  Relying on Mr. Han's

declaration is also appropriate because the ownership structure it describes is consistent with the

tax return filed by the limited partnership that owns Plaintiff.  ECF No. 43-28; *see Hallett v.*

*Stuart Dean Co.*, 517 F. Supp. 3d 260, 274 n.51 (S.D.N.Y. 2021) (explaining that "[the

plaintiff's] memory lapse" during a deposition "fail[ed] to create a genuine dispute" about fact that was proven by documentary evidence).  Furthermore, the discrepancy in Mr. Han's testimony about whether Plaintiff's sole member was a limited liability company or a limited partnership has no practical impact on the issue of diversity jurisdiction because either type of entity is a pass-through entity for the purpose of determining Plaintiff's states of citizenship.  *See Platinum-Montaur*, 943 F.3d at 615 (explaining that states of citizenship for limited liability companies and limited partnerships are derived from their members and partners, respectively).

Defendants similarly argue that Mr. Han testified during his deposition that the two fiduciary trusts within Plaintiff's ownership structure were also limited liability companies, despite the fact that Mr. Han also consistently referred to those entities as "trusts" throughout the deposition.  ECF No. 50 at 4.  However, Mr. Han made clear during the deposition that this too was only his "belie[f]," that he did not "know clearly" under what state's law the trusts were organized, and that they were set up by a law firm on his behalf more than ten years ago.  ECF No. 44-4 at 15–19.  Since the tax return for the limited partnership that owns Plaintiff identifies both entities as trusts, rather than limited liability companies, the Court concludes that the description in Mr. Han's declaration is accurate and that Plaintiff has adequately proven that diversity jurisdiction exists.  ECF No. 43-28 at 14, 20.[3]

---

[3]     Mr. Han also testified that he and his wife were the trustees of the two trusts that determine Plaintiff's citizenship without mentioning that his parents were also trustees.  *See* ECF No. 44-4 at 19–20.  That discrepancy between his deposition testimony and his declaration does not defeat Plaintiff's assertion of diversity jurisdiction because, even if his deposition testimony were accurate, all of the trustees in either scenario would be citizens of New Jersey.

B.   *The Forum Selection Clauses in the Security Agreements Do Not Apply to Plaintiff's Claims for Defendants' Breach of the Guaranties*

The Court rejects Defendants' request to dismiss or transfer this case based on the forum selection clauses in the parties' Security Agreements.  As an initial matter, venue in this District is proper because "[a] civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(b)(1).  Both Defendants concede in their answer to Plaintiff's amended complaint that they reside in this District.  ECF No. 41 ¶¶ 3–4.  Since "venue is proper so long as the requirements of § 1391(b) are met, irrespective of any forum-selection clause," the proper means of enforcing a forum selection clause is through a request to transfer the case to another federal court pursuant to 28 U.S.C. § 1404.  *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tx.*, 571 U.S. 49, 57, 59 (2013).  Alternatively, if a forum selection clause identifies a state court as the exclusively appropriate forum, a federal court may enforce the forum selection clause by dismissing the case pursuant to the doctrine of *forum non conveniens*.  *Id.* at 60–61.

When a forum selection clause applies to a particular dispute, a federal court must enforce the clause unless the party opposing its enforcement can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *see also Rabinowitz v. Kelman*, 75 F.4th 73, 81 (2d Cir. 2023) (describing non-enforcement of a forum selection clause as a "rare case" in which "the resisting party" must satisfy a "heavy burden").  Where, as here, the parties have argued that different contracts govern forum selection, "and the parties do not dispute the facts which gave rise to those two conflicting contracts," then the court must decide which contract applies as a matter of law.  *Lazare Kaplan Int'l, Inc. v. KBC Bank N.V.*, 528 F. App'x 33, 35 (2d Cir. 2013) (remanding case to district court for further consideration of

which contract applied); *see also Asoma Corp. v. SK Shipping Co.*, 467 F.3d 817, 822 (2d Cir.

2006) (holding that "the court must decide as a matter of law on the agreed facts which forum

selection clause governs").

      The forum selection clauses in the Security Agreements do not apply to Plaintiff's claims

for Defendants' alleged breaches of their Guaranties.  As described above, the Guaranties, the

Loan Agreement, and the Note do not contain forum selection clauses, although they each

contain a New Jersey choice of law clause.  ECF No. 43-3 § 14; ECF No. 43-4 § 14; ECF No.

43-5 § 14; ECF No. 43-6 § 14.  Only the Security Agreements contain forum selection clauses

requiring the parties to bring claims asserted pursuant to those agreements in a court located in

New Jersey.  ECF No. 1-7 § 14.[4]  Plaintiff has voluntarily withdrawn all claims previously

asserted pursuant to the Security Agreements.  *See* ECF No. 37 (Plaintiff's amended complaint

withdrawing claims based on Security Agreements); Minute Entry dated June 7, 2022

(describing Plaintiff's agreement reached during pre-motion conference to withdraw claims

based on Security Agreements).

      When choosing between multiple contracts to determine whether a particular forum

selection clause applies, a court must consider whether one "agreement contains a merger clause

that designates it as the document that fully embodies the parties' rights and obligations."

*Alfandary v. Nikko Asset Mgmt. Co., Ltd.*, 337 F. Supp. 3d 343, 358 (S.D.N.Y. 2018) (declining

to dismiss lawsuit based on forum selection clause in separate agreement because agreement that

plaintiff alleged defendants had breached contained a different forum selection clause and an

integration clause).  Both of the Guaranties contain integration clauses stating that those

---

[4]      The forum selection clauses in the Security Agreements do not specify whether any such
lawsuit must be brought in state or federal court.  ECF No. 1-7 § 14.

agreements fully embody the parties' rights and obligations thereunder.  ECF No. 43-5 § 14; ECF No. 43-6 § 14.  In light of these integration clauses, and since Plaintiff is suing based on alleged breaches of the Guaranties, the Court concludes that the Security Agreements' forum selection clauses do not apply to this dispute.

## II.   Plaintiff Is Entitled to Summary Judgment on the Issue of Defendants' Payment Obligations

### A.   Defendants Breached the Guaranties Because the Parties Never Modified the Loan Agreement

Plaintiff has proven all the elements of its claims that Defendants breached the Guaranties by failing to pay SH 168's unpaid loan to Plaintiff.  To prevail on a breach of contract claim, plaintiffs have "the burden to prove four elements:  first, that the parties entered into a contract containing certain terms; second, that plaintiffs did what the contract required them to do; third, that defendants did not do what the contract required them to do, defined as a breach of the contract; and fourth, that defendants' breach, or failure to do what the contract required, caused a loss to the plaintiffs."  *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016); *see also Woytas v. Greenwood Tree Experts, Inc.*, 206 A.3d 386, 392 (N.J. 2019) (describing same elements).[5]  Interpreting a contract by determining the parties' intent, "in an appropriate setting, is a purely legal question that is particularly suitable for decision on a motion for summary judgment."  *Globe Motor*, 139 A.3d at 64.

Defendants do not dispute that Plaintiff and SH 168 entered into the Loan Agreement and the Note and that Plaintiff and Defendants entered into the Guaranties.  ECF No. 48-9 ¶¶ 6, 9, 11. They do not dispute that Plaintiff performed by funding the loan.  *Id.* ¶ 7.  Nor do Defendants

---

[5]   As described above, the Guaranties, the Loan Agreement, and the Note each contain a New Jersey choice of law clause.  ECF No. 43-3 § 14; ECF No. 43-4 § 14; ECF No. 43-5 § 14; ECF No. 43-6 § 14.

dispute that failure to pay the loan when due was an event of default and, therefore, a breach of the agreements. *Id.* ¶ 8. Nonpayment would obviously cause Plaintiff a loss. The only element that Defendants dispute is whether they performed because, although they concede that they have not paid the full amount required by the original Loan Agreement, Note, and Guaranties, Defendants contend that their partial, post-default payments totaling $125,000 complied with the Modification Agreement, to which they contend the parties agreed. *Id.* ¶¶ 15–16.

However, the undisputed facts demonstrate as a matter of law that Plaintiff never agreed to the Modification Agreement. New Jersey's applicable statute of frauds "requires a writing signed by a lender if a loan exceeds $100,000," and that writing requirement also "appl[ies] to a loan modification." *JPMorgan Chase Bank, N.A. v. Shivaram*, No. A-4275-18T4, 2020 WL 1026933, at *3 (N.J. App. Div. Mar. 3, 2020) (rejecting affirmative defense that lender had agreed to modify mortgage agreement). Additionally, the Loan Agreement, Note, and Guaranties each included a provision that required all amendments or modifications to be in writing and "executed by" Plaintiff. ECF No. 43-3 § 13; ECF No. 43-4 § 16; ECF No. 43-5 § 15; ECF No. 43-6 § 15. Although Defendant Chen signed the Modification Agreement on behalf of SH 168, *see* ECF No. 48-3, Defendants concede that Plaintiff never signed the Modification Agreement in response, *see* ECF No. 48-1 ¶ 26. Instead, Defendants rely on the emails exchanged among Defendants' counsel, Plaintiff's counsel, and one of Plaintiff's employees, to contend that Plaintiff's representatives conveyed Plaintiff's assent to the Modification Agreement by email. ECF No. 48-10 at 3–4.

New Jersey law permits parties to reach a written agreement that complies with the statute of frauds through an exchange of emails even if "neither party actually signed a separate written document embodying the terms set forth in the emails." *CAM Tr. v. Revere High Yield*

*Fund, LP*, No. A-1250-17T3, 2018 WL 5810296, at *4 (N.J. App. Div. Nov. 7, 2018).  However, an exchange of emails is not sufficient if the parties conditioned their agreement by email "on the parties subsequently reducing its terms to writing in a separate document."  *Id.* at *5.  Those are the exact circumstances that existed here because Plaintiff's attorney advised Defendants' attorney, before SH 168 signed the Modification Agreement and made a $75,000 payment, purportedly pursuant to that agreement, that the payment "w[ould] be applied to [SH 168's] outstanding balance" on the Note.  ECF No. 49-1 at 2.  Plaintiff's attorney further explained that Plaintiff would not consider the payment to be performance of the contemplated Modification Agreement "until such time that a formal agreement has been duly executed and delivered."  *Id.*  Accordingly, since Plaintiff never executed and delivered the Modification Agreement, no modification of the Loan Agreement, the Note, or the Guaranties ever occurred.

## B.  *Defendants' Remaining Affirmative Defenses and Counterclaim Fail*

Other than Defendants' affirmative defense that Plaintiff agreed to modify the terms of the Loan Agreement, Defendants have not proffered any evidence to support the affirmative defenses asserted in their answer or made arguments in support of those defenses in their brief in opposition to Plaintiff's motion for summary judgment.  As explained above, Defendants have therefore abandoned those affirmative defenses.  *Townsquare Media*, 2022 WL 4538954, at *20–21 (holding on summary judgment that defendants had "abandoned" their affirmative defenses under similar circumstances).  The Court, therefore, will not discuss Defendants' seventeen affirmative defenses in full, but a few are worth mentioning to illustrate their lack of merit.

SH 168 is not a necessary party that Plaintiff was required to name as a defendant because "[i]n cases involving guarantees, the beneficiary of a guarantee typically may choose to sue the guarantor alone, without the principal debtor."  *PNJ Cap. Corp. v. Bauco*, No. 16-cv-6242, 2018 WL 485973, at *5 (S.D.N.Y. Jan. 18, 2018).  This is especially true where, as here,

17

the guarantors are the owners "of a company that was not joined in the action" and are, therefore, "certainly able to adequately represent the company." *Id.*; *see also Barr & Morgan v. Eljamal*, No. 19-cv-1455, 2020 WL 3630421, at *4 (D. Conn. July 2, 2020) (refusing to dismiss claim to enforce a guaranty because defendant guarantor's company was not a necessary party).

Defendants make the conclusory assertion that whether they "entered into the [Guaranty] agreements voluntarily and without coercion or duress are triable issues of fact," but they have not cited to any evidence supporting the existence of coercion.  ECF No. 48-9 ¶ 13.  There is no apparent source of coercion other than Defendants' or SH 168's financial distress, and under New Jersey law, "feeling pressure about personal finances does not constitute economic duress in the legal sense, which has been defined as a wrongful or unlawful act that deprives the victim of his or her unfettered will."  *Dean v. Provisor*, No. A-1199-20, 2022 WL 2711255, at *6 (N.J. App. Div. July 13, 2022) (affirming summary judgment in favor of plaintiff on breach of contract claim).

Defendants' defense of usury also fails.  With respect to New Jersey's civil prohibition against usury, N.J.S.A. 31:1–1, the statute contains an exemption that applies to loans of more than $50,000.  N.J.S.A. 31:1–1(e)(1).  Additionally, Defendants cannot assert the defense of civil usury because the statute says that "[n]o corporation, limited liability company or limited liability partnership shall plead or set up the defense of usury."  N.J.S.A. 31:1–6.  "[A]n individual who personally guarantees the corporate obligation is also prohibited from asserting usury as a defense or counterclaim."  *Khrakovskiy v. Denise*, No. 06-cv-1033, 2009 WL 3380326, at *5 (D.N.J. Oct. 19, 2009) (granting summary judgment dismissing usury counterclaim); *see also Pegasus Blue Star Fund, LLC v. Canton Prods., Inc.*, No. 08-cv-1533, 2009 WL 3246616, at *2 (D.N.J. Oct. 6, 2009) (dismissing usury counterclaim for same reason).

18

In any event, New Jersey's civil usury statute, "does not apply to interest on defaulted obligations," such as the post-default interest rate at issue here.  *Westdale Constr., Ltd. v. Liberty State Fin. Holdings Corp.*, No. 09-cv-2973, 2010 WL 1380380, at *3 (D.N.J. Apr. 1, 2010) (granting summary judgment on breach of contract claim).  New Jersey's criminal prohibition against usury does not preclude Plaintiff's efforts to collect Defendants' Guaranties because it applies only to loans with interest rates higher than 30% made to individuals and interest rates higher than 50% made to corporate entities, both of which exceed the 25% annual interest rate applicable to the Note and Defendants' Guaranties.  N.J.S.A. 2C:21–19(a)(2).

Finally, Defendants cannot invoke executive orders promulgated by the Governor of New York that prohibited evictions or foreclosures, which were in place at the time this action was commenced but have since expired, because Plaintiff's claims seeking to enforce a payment guaranty do not involve eviction or foreclosure.  *See* ECF No. 41 ¶ 52.  Defendants have not even attempted to cite a single legal authority suggesting that these executive orders apply to the circumstances of this case, and the Court has not identified any such authority.

Plaintiff also moves for summary judgment dismissing Defendants' counterclaim, which simply asserts that "[t]his action was brought in bad faith, [and] Defendants are entitled to recover attorney's fees in defending this action."  ECF No. 41 ¶ 67.  Defendants have not argued against the dismissal of that counterclaim in their opposition brief or provided any legal authority that would support an award of attorneys' fees, *see* ECF No. 49-10, but New Jersey's "Frivolous Litigation Statute," N.J.S.A. 2A:15–59.1, "permits a court to award reasonable counsel fees and litigation costs to a prevailing party in a civil action if the court determines that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous."  *Toll Bros., Inc. v. Township of W. Windsor*, 918 A.2d 595, 599 (N.J. 2007).  This authority to award attorneys'

fees is a "limited exception[] to the American Rule for civil justice, whereby litigants are expected to bear their own counsel fees." *Bove v. AkPharma Inc.*, 213 A.3d 948, 962 (N.J. App. Div. 2019).  Accordingly, "the Frivolous Litigation Statute is interpreted restrictively," and "[t]he burden of proving that the non-prevailing party acted in bad faith is on the party who seeks fees and costs."  *Id.* at 964.

Granting summary judgment dismissing Defendants' counterclaim is appropriate because Defendants are not the prevailing party since the Court is ordering Defendants to pay their unpaid Guaranties.  Additionally, even though the Court is not granting Plaintiff's request for specific performance of the Guaranties' financial disclosure obligations, for the reasons further explained below, Defendants have not met their burden of demonstrating that Plaintiff acted in bad faith in seeking that form of relief.  *See Sun Chem. Corp. v. Fike Corp.*, No. 13-cv-4069, 2018 WL 3492143, at *3–4 (D.N.J. July 20, 2018) (holding that sanctioning plaintiff under New Jersey's Frivolous Litigation Statute was not warranted even though defendants had obtained summary judgment dismissing plaintiff's claims).

C.   *Plaintiff Has Not Demonstrated a Need for Specific Performance of Defendants' Financial Disclosure Obligations*

Each Guaranty includes a provision pursuant to which each Defendant agreed that he would "provide [Plaintiff] any financial statement or information [Plaintiff] request[ed]."  ECF No. 43-5 § 18; ECF No. 43-6 § 18.  After Defendants' default, Plaintiff's counsel sent a letter to each Defendant requesting various financial information.  *See* ECF Nos. 43-7 & 43-8.  Plaintiff alleges that Defendants never complied, and although Defendants "den[y] receiving such written demand," they have presented no evidence to support that assertion, such as a sworn denial by either Defendant.  ECF No. 48-9 ¶ 18.  Plaintiff therefore seeks summary judgment "to enforce the financial information requirement" in the Guaranties, *see* ECF No. 43-31 at 4, and Plaintiff's

amended complaint has asserted each Defendant's alleged breach of this provision as a separate

cause of action, *see* ECF No. 37 ¶¶ 26–30, 40–44.

Under New Jersey law, however, "specific performance is a remedy, and not an

independent cause of action." *ADP, LLC v. Capote*, No. 15-cv-1355, 2015 WL 13447655, at *1

n.2 (D.N.J. July 28, 2015); *see also Callas v. Callas*, No. 14-cv-7486, 2021 WL 3400861, at *8

(D.N.J. Aug. 4, 2021) (declining to grant plaintiff summary judgment on specific performance

cause of action for that reason). The Court therefore directs summary judgment dismissing the

second and eighth claims in Plaintiff's amended complaint, which seek to assert standalone

claims for specific performance. *See* ECF No. 37 ¶¶ 26–30, 40–44. Rule 56(f) permits the Court

to "grant summary judgment for a nonmovant," *see* Fed. R. Civ. P. 56(f)(1), and the Second

Circuit has authorized granting such relief without notice against a party that has moved for

summary judgment in its favor if that party "suffer[s] no procedural prejudice." *Bridgeway

Corp. v. Citibank*, 201 F.3d 134, 139 (2d Cir. 2000); *see also Medacist Sols. Grp., LLC v.

CareFusion Sols., LLC*, No. 19-cv-1309, 2021 WL 293568, at *4 (S.D.N.Y. Jan. 28, 2021)

(describing same standard). Plaintiff has not been procedurally prejudiced by this dismissal

because it can pursue the same relief as part of its claims that Defendants breached their

Guaranties.

However, "[u]nder New Jersey law, specific performance is not an automatic remedy for

a breach of contract, but rather a matter within the trial court's discretion which must be

exercised on the basis of equitable considerations." *TD Auto Fin. LLC v. Cinema Car II, Inc.*,

No. 13-cv-4230, 2016 WL 7319674, at *7 (D.N.J. Dec. 14, 2016). "In any suit seeking specific

performance, a grant of equitable relief is available only as a substitute in the absence of an

adequate remedy at law." *Meng v. Du*, No. 19-cv-18118, 2023 WL 2625274, at *7 (D.N.J. Mar.

24, 2023).  "A party seeking specific performance must establish the legal right to such relief by showing that:  (1) the contract at issue is valid and enforceable; (2) the terms of the contract are clear, such that the court can determine with reasonable certainty, the duties of each party and the conditions under which performance is due; and (3) an order compelling performance would not be harsh or oppressive."  *TD Auto Fin.*, 2016 WL 7319674, at *7.

Plaintiff's motion for summary judgment neither addresses the applicable standard for granting specific performance under New Jersey law nor attempts to explain why, if the Court were to grant summary judgment awarding damages for the unpaid amounts under Defendants' Guaranties, Plaintiff would lack an adequate remedy at law in the absence of specific performance.  *See* ECF No. 43-31.  Under these circumstances, the Court declines to find at this stage that specific performance is warranted.  *See N.Y. Cmty. Bank v. Est. of Paraskevaides*, No. 18-cv-3987, 2019 WL 3024703, at *6 (S.D.N.Y. July 11, 2019) (declining after bench trial to award specific performance for similar financial disclosure provision in guaranty agreement where court had ordered defendants to pay the money owed under the guaranty).

### D.    Calculation of Plaintiff's Damages

Defendants have not offered any evidence or argument to dispute Plaintiff's calculation of damages, other than their insistence that Plaintiff agreed to modify the Loan Agreement and their assertion that the applicable interest rate is usurious.  ECF No. 48-9 ¶ 16(a).  The Court finds that Plaintiff's calculation that Defendants owed $3,671,875 as of February 28, 2022, properly accounts for both the payments Defendants do not dispute that they missed and the $125,000 in post-default payments that Defendants made.  *See* ECF No. 43-17.  Although Plaintiff has not explained how it has calculated the ongoing daily interest accrual of $1,736.11, *see* ECF No. 48-9 ¶ 16(a), the Court's own calculations indicate that Plaintiff calculated this amount by applying the Note's 25% annual default rate to the $2.5 million principal amount of

the Note, without applying it to any already-accrued interest, based on the 360-day year method provided by the Note, *see* ECF No. 43-4 § 3.  The Court deems this method of calculation appropriate.  After applying that daily interest, Defendants owe a combined total of $4,647,568.82  as of September 13, 2023.

The Guaranties authorize Plaintiff to recover "reasonable attorneys' fees, court costs and other legal expenses" if Defendants have defaulted.  ECF No. 43-5 § 11; ECF No. 43-6 § 11.  As with Plaintiff's standalone claims for specific performance, the Court directs summary judgment dismissing the sixth and twelfth claims in Plaintiff's amended complaint, which seek attorneys' fees and costs as standalone claims.  *See Mass v. Greg Cohen Promotions, LLC*, No. 18-cv-2239, 2023 WL 2267354, at *3 (S.D.N.Y. Feb. 28, 2023) (explaining that court had dismissed plaintiff's claim for "attorney's fees and costs" "as separate causes of action, without prejudice to [p]laintiff seeking attorney's fees and costs as a prevailing party as provided in" the parties' contract); *JP Morgan Chase Bank, N.A. v. Reifler*, No. 11-cv-4016, 2014 WL 11350916, at *4 (S.D.N.Y. Mar. 16, 2014) (denying motion for summary judgment on plaintiff's separate cause of action to collect attorneys' fees owed pursuant to guaranty agreement but still "consider[ing] attorneys' fees as damages related to [d]efendant's breach").

The Court declines at this stage to award Plaintiff fees and costs as damages because Plaintiff's calculation of its attorneys' fees and costs includes fees that Plaintiff has incurred as part of separate lawsuits pending in this District asserting claims for fraudulent conveyances against Defendants and others.  *See* ECF No. 43-1 ¶¶ 39, 45, 48; ECF No. 43-19.  Those claims have not been adjudicated on the merits, and Plaintiff has provided no legal authority explaining why, even if the claims in those separate cases were resolved in Plaintiff's favor, Plaintiff would be entitled to collect those fees and costs pursuant to the Guaranties.  If Plaintiff wishes to

23

continue pursuing its request for attorneys' fees and collection costs, it must submit supplemental briefing addressing the proper amount of these damages, and Defendants will not be entitled to a jury trial on this issue. *See McGuire v. Russel Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993) (explaining that "when a contract provides for an award of attorneys' fees," a jury is entitled to decide disputes of fact related to liability under the contract, but "the judge is to determine a reasonable amount of fees").

## CONCLUSION

For the reasons set forth above, the Court DENIES Defendants' motion to dismiss this case for lack of diversity jurisdiction or to dismiss or transfer the case pursuant to the forum selection clause in the parties' Security Agreements.  ECF No. 44.

The Court GRANTS in part Plaintiff's motion for summary judgment, strikes Defendants' affirmative defenses, and dismisses Defendants' counterclaim.  ECF No. 43.  The Court grants summary judgment on the first and seventh claims in Plaintiff's amended complaint for breach of Defendants' Guaranties, and Defendants are jointly and severally liable for $4,647,568.82, as of the date of this order.  The Court dismisses the second and eighth claims in Plaintiff's amended complaint seeking specific performance and declines at this time to impose injunctive relief requiring Defendants to comply with the financial disclosure obligations in the Guaranties.  The Court also dismisses the sixth and twelfth claims in Plaintiff's amended complaint seeking attorneys' fees and costs as standalone claims.  Plaintiff has already voluntarily withdrawn all of its remaining claims.  *See* ECF No. 37.

Plaintiff may submit a supplemental letter no longer than five pages on or before September 27, 2023, accompanied by any necessary exhibits documenting Plaintiff's fees and costs, providing factual and legal support for Plaintiff's request for specific performance and for

attorneys' fees and costs incurred up through the date of that letter.  Alternatively, Plaintiff may submit a letter on or before that same date stating that Plaintiff has decided to waive its request for such relief and instead seeks entry of judgment against Defendants for their breach of their payment obligations.  If Plaintiff decides not to waive its requests for such relief, Defendants may file a responsive letter no longer than five pages on or before October 11, 2023.

     SO ORDERED.

                                    */s/ Hector Gonzalez*

                                    HECTOR GONZALEZ
                                    United States District Judge

Dated: Brooklyn, New York
        September 13, 2023

25